IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: SEARCH WARRANT )<br>)<br>IN THE MATTER OF THE SEARCH OF )<br>INFORMATION ASSOCIATED WITH )<br>FACEBOOK ACCOUNTS: )<br>)<br>100026575416112 AND )<br>100015526953826 )<br>)<br>THAT ARE STORED AT PREMISES )<br>CONTROLLED BY FACEBOOK, INC. ) | Magistrate No. 18-1058 M<br><br>**[UNDER SEAL]** |

### APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Sean P. Kiley, a Deputy United States Marshal with the United States Marshal's Office, Pittsburgh, Pennsylvania, being duly sworn, depose and state as follows:

**A.    Introduction and Agent Background**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain FACEBOOK INC. user ID that is stored at premises owned, maintained, controlled, or operated by FACEBOOK INC., a social networking company headquartered at 1601 Willow Road, Menlo Park, CA 94025. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), and Federal Rule of Criminal Procedure 41, to require FACEBOOK INC. to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID described herein.

2. I have been employed by the United States Marshals Service (USMS) for the last sixteen years as a Deputy U.S. Marshal (DUSM). I have worked in the Philadelphia, Birmingham and Pittsburgh USMS Field Offices. I am currently assigned to the USMS Western Pennsylvania

Fugitive Task Force (WPAFTF) in the Western District of Pennsylvania (WDPA). My duties include the investigation and apprehension of federal fugitives and sexual predators, as well as assisting state and local law enforcement agencies in the location of suspects involved in violent crimes and who are actively seeking to avoid apprehension and prosecution.

3. The information contained in this affidavit is based on my personal observations, my training, experience and knowledge, my review of documents and evidence obtained during the investigation, interviews of confidential sources, and conversations with other USMS investigators and state and local law enforcement officers. Since this affidavit is submitted for the limited purpose of establishing probable cause, I have not set forth each and every fact that I know regarding this investigation.

4. I am aware, based on my training and experience, that evidence of criminal activity can often be found on or within social networking sites such as FACEBOOK INC. For example, co-conspirators in a drug distribution ring are often "friends" with each other, meaning that the two persons have decided to connect digitally. This is critical evidence that two persons are known to each other. Further, I am aware that FACEBOOK INC. has a message feature similar to email. With this feature, FACEBOOK INC. users can write messages to each other. This feature is important, as it allows users to communicate with each other easily, even if they do not have each other's phone number or email address.

5. As set forth herein, based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that within the aforementioned accounts there exists evidence of violations of Title 18, United States Code, Section 1073, Flight to Avoid Prosecution and Title 18 United States Code, Section 3583, Supervised Release Violation.

6.      With this warrant, I request the account information associated with the following FACEBOOK INC. user identifications:

a.      **100026575416112 and 100015526953826**: Based on photographs and other personal identifiers on the accounts, these accounts belong to and are being utilized by Dana Penney.

B.      **About FACEBOOK INC.**

7.      FACEBOOK INC. owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. FACEBOOK INC. allows its users to establish accounts with FACEBOOK INC., and users can then use their accounts to share written news, photographs, videos, and other information with other FACEBOOK INC. users, and sometimes with the general public.

8.      FACEBOOK INC. asks users to provide basic contact and personal identifying information to FACEBOOK INC., either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, FACEBOOK INC. passwords, FACEBOOK INC. security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. FACEBOOK INC. also assigns a user identification number to each account.

9.      FACEBOOK INC. users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. FACEBOOK INC. assigns a group identification number to each group. A FACEBOOK INC. user can also connect directly with individual FACEBOOK INC. users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of FACEBOOK INC. and can exchange communications or view information about each

other. Each FACEBOOK INC. user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

10. FACEBOOK INC. users can select different levels of privacy for the communications and information associated with their FACEBOOK INC. accounts. By adjusting these privacy settings, a FACEBOOK INC. user can make information available only to himself or herself, to particular FACEBOOK INC. users, or to anyone with access to the Internet, including people who are not FACEBOOK INC. users. A FACEBOOK INC. user can also create "lists" of FACEBOOK INC. friends to facilitate the application of these privacy settings. FACEBOOK INC. accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from FACEBOOK INC.

11. FACEBOOK INC. users can create profiles that include photographs, lists of personal interests, and other information. FACEBOOK INC. users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. FACEBOOK INC. users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, FACEBOOK INC. users can "check in" to particular locations or add their geographic locations to their FACEBOOK INC. posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

12. FACEBOOK INC. allows users to upload photos and videos. It also provides users the ability to "tag" (i.e., label) other FACEBOOK INC. users in a photo or video. When a user is

tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For FACEBOOK INC.'s purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

13. FACEBOOK INC. users can exchange private messages on FACEBOOK INC. with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on FACEBOOK INC., which also stores copies of messages sent by the recipient, as well as other information. FACEBOOK INC. users can also post comments on the FACEBOOK INC. profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, FACEBOOK INC. has a Chat feature that allows users to send and receive instant messages through FACEBOOK INC. These chat communications are stored in the chat history for the account. FACEBOOK INC. also has a Video Calling feature, and although FACEBOOK INC. does not record the calls themselves, but it does keep records of the date of each call.

14. If a FACEBOOK INC. user does not want to interact with another user on FACEBOOK INC., the first user can "block" the second user from seeing his or her account.

15. FACEBOOK INC. has a "like" feature that allows users to give positive feedback or connect to particular pages. FACEBOOK INC. users can "like" FACEBOOK INC. posts or updates, as well as webpages or content on third-party (i.e., non-FACEBOOK INC.) websites. FACEBOOK INC. users can also become "fans" of particular FACEBOOK INC. pages.

16. FACEBOOK INC. has a search function that enables its users to search FACEBOOK INC. for keywords, usernames, or pages, among other things.

17. Each FACEBOOK INC. account has an activity log, which is a list of the user's posts and other FACEBOOK INC. activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a FACEBOOK INC. page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's FACEBOOK INC. page.

18. FACEBOOK INC. Notes is a blogging feature available to FACEBOOK INC. users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

19. The FACEBOOK INC. Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. FACEBOOK INC. users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

20. FACEBOOK INC. also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

21. In addition to the applications described above, FACEBOOK INC. also provides its users with access to thousands of other applications on the FACEBOOK INC. platform. When a FACEBOOK INC. user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

22. FACEBOOK INC. uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to

videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' FACEBOOK INC. user identification numbers; groups and networks of which the user is a member, including the groups' FACEBOOK INC. group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of FACEBOOK INC. applications.

23.   FACEBOOK INC. also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on FACEBOOK INC., including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a FACEBOOK INC. profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

24.   Social networking providers like FACEBOOK INC. typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, FACEBOOK INC. users may communicate directly with FACEBOOK INC. about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like FACEBOOK INC. typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

C.   **Probable Cause**

25.   On June 20, 2018, Supervisory U.S. Probation Officer Marcus White submitted a petition for warrant in Criminal No. 2:03-CR-229 charging Dana Penney with violating his supervised release on his prior conviction for Title 21 United States Code, Section 841 (a)(1) and

7

841(b)(1)(A)(iii), Distribution of 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as crack, a Schedule II controlled substance. On June 21, 2018, United States District Judge (USDJ) Cathy Bissoon issued the arrest warrant for Dana Penney based on the petition.

26. The petition alleges that on or about June 20, 2018, the U.S. Probation Office received information from the Pennsylvania Attorney General's Office (PA AG) pertaining to Penney and the investigation so far against him. PA AG executed a search warrant on an address associated with Penney that yielded large amounts of cocaine, heroin and digital scales. PA AG filed new state narcotics charges against Penney based on the results of the search warrant and a Beaver County arrest warrant in OTN# U 598665-4 was issued on June 21, 2018.

27. DUSM Kiley was assigned the Penney fugitive investigation on June 22, 2018 and has compiled additional data on Penney from PA AG, Drug Enforcement Administration (DEA), Pennsylvania State Police (PSP) and U.S. Probation.

28. Penney was also charged by PSP pertaining to a home invasion robbery/homicide that occurred the early morning hours of July 18, 2018 on 3rd Ave in Aliquippa, PA involving Penney and another accomplice where the actors were wearing DEA t-shirts and Penney's partner was killed. Penney was charged by PSP - Beaver with Criminal Homicide in OTN# U 607028-2 and a warrant was issued on July 18, 2018.

29. Since June 22, 2018, surveillance and arrest attempts for PENNEY were made by USMS in Aliquippa and Ambridge to no avail and PENNEY's current whereabouts are unknown.

30. As stated throughout, PENNEY is currently a fugitive and his whereabouts remain unknown. On July 25, 2018, DUSM KILEY accessed the web based social networking site "FACEBOOK INC." and conducted a name search utilizing the name Dana PENNEY. The search

yielded two Dana PENNEY pages with profile pictures that resembles PENNEY. Dana PENNEY has an https://www.facebook.com/dana.penney.31. The profile picture displays the likeness of Dana PENNEY. DUSM KILEY reviewed the profile page for PENNEY's account which provided a link to PENNEY's account bearing identification number 1000265754161 12. DUSM KILEY reviewed PENNEY's photo section which displayed four photographs which were easily recognizable as PENNEY with an updated profile picture dated June 01, 2018.

31. PENNEY also has an https://www.facebook.com/dana.penney.129. The profile picture displays the likeness of Dana PENNEY. DUSM KILEY reviewed the profile page for PENNEY's account which provided a link to PENNEY's account bearing identification number 100015526953826. DUSM KILEY reviewed PENNEY's photo section which displayed four photographs which were easily recognizable as PENNEY with an updated profile picture dated May 19, 2018.

32. On July 27, 2018, a pen register trap and trace order was signed by U.S. Magistrate Judge (USMJ) Cynthia Reed EDDY for PENNEY's https://www.facebook.com/dana.penney.31 page with the Facebook Inc. identification number of 100026575416112. So far, IP address physical connection locations have not been identified.

33. On August 16, 2018, connecting IP addresses for PENNEY's https://www.facebook.com/dana.penney.31 page with the Facebook Inc. identification number of 100026575416112 were identified that they were utilized on a TOR browser.

34. DUSM KILEY knows through his training and experience that a TOR browser is commonly used to navigate the dark web for illicit means (drug and sex trafficking, etc.) due to law enforcement's inability to track the IP address back to a physical connection location.

35. Due to the above reasons, DUSM KILEY believes that further examination of PENNEY's Facebook Inc. pages through a search warrant (Facebook messenger content, photos, etc.) would aide in the determination of his current whereabouts. DUSM KILEY is also aware through his training and experience that fugitives and other criminal actors communicate via Facebook Inc. messenger to conceal their messaging from law enforcement officials.

## CONCLUSION

36. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require FACEBOOK INC. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

37. Based on the forgoing, I request that the Court issue the proposed search warrant.

38. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

39.	Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Sean Kiley
United States Marshals
Deputy United States Marshal

Subscribed to and sworn before
me this 20th day of August, 2018.

LISA PUPO LENIHAN
United States Magistrate Judge
Western District of Pennsylvania

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

This warrant applies to information associated with the FACEBOOK INC. user ID Numbers: **100026575416112 and 100015526953826** that are stored at premises owned, maintained, controlled, or operated by FACEBOOK INC., a company headquartered at 1601 Willow Road, Menlo Park, CA 94025.

**ATTACHMENT B**

**Particular Things to be Seized**

I.   **Information to be disclosed by FACEBOOK INC.**

To the extent that the information described in Attachment A is within the possession, custody, or control of FACEBOOK INC., including any messages, records, files, logs, or information that have been deleted but are still available to FACEBOOK INC., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), FACEBOOK INC. is required to disclose the following information to the government for the user ID listed in Attachment A for the dates **June 01, 2018 to the date of issuance of the order**:

(a)   All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, FACEBOOK INC. passwords, FACEBOOK INC. security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)   All activity logs for the account and all other documents showing the user's posts and other FACEBOOK INC. activities;

(c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' FACEBOOK INC. user identification numbers; groups and networks of which the user is a member, including the groups' FACEBOOK INC. group identification numbers; future and past event postings; rejected "Friend" requests;

13

(e) comments; gifts; pokes; tags; and information about the user's access and use of FACEBOOK INC. applications;

(e) All other records of communications and messages made or received by the user, **including all private messages, chat history, video calling history, and pending "Friend" requests**;

(f) All "check ins" and other location information;

(g) All records of the account's usage of the "Like" feature, including all FACEBOOK INC. posts and all non-FACEBOOK INC. webpages and content that the user has "liked";

(h) All information about the FACEBOOK INC. pages that the account is or was a "fan" of;

(i) All past and present lists of friends created by the account;

(j) All records of FACEBOOK INC. searches performed by the account;

(k) All information about the user's access and use of FACEBOOK INC. Marketplace;

(l) The types of service utilized by the user;

(m) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(n) All privacy settings and other account settings, including privacy settings for individual FACEBOOK INC. posts and activities, and all records showing which FACEBOOK INC. users have been blocked by the account;

14

(o) All records pertaining to communications between FACEBOOK INC. and any person regarding the user or the user's FACEBOOK INC. account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 1073, Flight to Avoid Prosecution and Title 18 United States Code, Section 3583, Supervised Release Violation.

Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

16

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
# RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by FACEBOOK INC., and my official title is _____. I am a custodian of records for FACEBOOK INC. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of FACEBOOK INC., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.  such records were kept in the ordinary course of a regularly conducted business activity of FACEBOOK INC.; and

c.  such records were made by FACEBOOK INC. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____   _____
Date                                    Signature